[J-52-2015] [MO: Baer, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 14 EM 2015 |
| | : | |
| Petitioner | : | Emergency Petition for Extraordinary |
| | : | Relief Under King's Bench Jurisdiction |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRANCE WILLIAMS, | : | |
| | : | |
| Respondent | : | |
| | | ARGUED: September 10, 2015 |

**CONCURRING OPINION**

**MR. JUSTICE STEVENS**                    **DECIDED: December 21, 2015**

On June 11, 1984, Appellant deceived Amos Norwood, who was on his way to church, into giving him a ride. Once at a secluded spot in a cemetery Appellant stole $20 from Mr. Norwood. While Mr. Norwood begged for his life, Appellant tied his hands together, tied his legs together and stuffed socks in his mouth. Appellant beat Mr. Norwood with a tire iron until Mr. Norwood was dead, hid the body behind two tombstones, covered the body with loose brush and later that evening soaked Mr. Norwood's body in gasoline and set it on fire.

In 1990, the Pennsylvania Supreme Court determined Appellant's due process rights were protected, and after further review through Post Conviction Act appeals, it confirmed this finding, and held that the jury verdict would be carried out. See Majority Opinion at 2 for procedural history.

On January 13, 2015, Governor Tom Corbett signed a death warrant scheduling Appellant's execution for March 4, 2015. On February 13, 2015, newly elected Governor Tom Wolf issued a reprieve of Appellant's death sentence.

Three decades have passed, and Appellant's horrific actions snuffing out the life of Mr. Amos Norwood have become secondary to philosophic discussions about the viability of the death penalty. As stated so eloquently by Paul Simon, "A man hears what he wants to hear and disregards the rest." Simon & Garfunkel, "The Boxer," on Bridge over Troubled Water (Columbia Records 1970).

While I concur with the Majority finding that the Governor has the authority to issue a temporary reprieve in this case, I write separately to express my concern that our decision does not encourage or validate executive branch nullification of lawfully enacted statutes.[1]

Article II section 1 of the Pennsylvania Constitution states: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1.

Article IV section 2 states, inter alia, "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed…". PA. CONST. art. IV, § 2. Thus, a Governor has a constitutional duty to make certain the laws shall be carried out. Therefore, once a statute is duly passed and signed by the Governor, that becomes the law of Pennsylvania.

---

[1] My discussion is strictly about the relationship between the executive and legislative branches of government, and at all times I remain respectful to Governor Tom Wolf and members of the Senate. Senate Resolution No. 6 of 2011 established a Joint State Government Commission to establish a bipartisan task force and advisory committee to conduct a study of capital punishment in Pennsylvania and its co-chairmen, Senator Stewart Greenleaf and Senator Daylin Leach, as well as the Senate committee members are highly respected members of the Senate.

Any Governor who is elected and personally opposes such law, no matter how distasteful to him or her, violates one of our country's basic principles should that Governor refuse to enforce the law. As John Adams stated during the early days of our country: we are a "government of laws, not of men." John Adams, "Letters of Novanglus No. 7," <u>Boston Gazette</u> (1774). In other words, the Executive Branch cannot unilaterally and arbitrarily nullify a valid, existing statute by refusing to enforce it.

Pennsylvania has enacted a capital punishment law.[2] While I acknowledge the death penalty is an emotional, controversial issue, Pennsylvania has determined it is the appropriate punishment for certain enumerated offenses, after full due process of law is afforded the defendant. Indeed, juries listen to horrific facts and after due deliberation, such as in this case, make the decision to employ the penalty of death. If the death penalty is to no longer apply in Pennsylvania, that decision should come from the elected members of the Pennsylvania House and Senate and not from nullification by an Executive or by fiat by the Judiciary.

The Majority's conclusion that the Governor has the power to issue reprieves is consistent with a plain language interpretation of the Constitution.[3] What is problematic

---

[2] Pennsylvania's Death Penalty Statute provides, in part:

**§ 9711. Sentencing procedure for murder of the first degree.**

(a) Procedure in jury trials.

  (1) After a verdict of murder of the first degree is recorded and before the jury is discharged, the court shall conduct a separate sentencing hearing in which the jury shall determine whether the defendant shall be sentenced to death or life imprisonment.

42 Pa.C.S. § 9711(a)(1).

[3] Article IV, Section 9 states, in part, "In all criminal cases except impeachment the Governor shall have power to remit fines and forfeitures, to grant reprieves…" PA. CONST. art. IV, § 9.

in this particular case is that the Governor has conditioned the timing of the reprieve on a report from the aforesaid committee indicating it will continue until the Task Force report is issued and "any recommendations contained therein are satisfactorily addressed." See Governor Wolf's Reprieve to Terrance Williams dated February 13, 2015.

There is no time limit on when such Report will be issued or if there will be any Report at all. Who determines if any recommendations are "satisfactorily" addressed?" My concern is that by conditioning the reprieve on a speculative event and requiring concerns be "satisfactorily" addressed, the reprieve is not truly temporary in nature. It has already been four years since the passage of Senate Resolution No. 6, supra, and thirty-one years since Amos Norwood was robbed, tortured and murdered.

In any event, I agree with the Majority that the Governor has the constitutional power to issue a reprieve in this case and would urge such reprieve to be made truly temporary in nature. In this case, the defendant has had due process of law for murdering Amos Norwood in 1984, a crime for which he was convicted in 1986, and has received careful review by the Pennsylvania Supreme Court and the federal courts.

The Pennsylvania Supreme Court is in danger of becoming irrelevant in death penalty cases. Decades come and go after a defendant has had due process of law and appropriate review by this Court, yet the decisions of this Court affirming the convictions are ignored. The families of the victims are victimized again and again, this time by the failure of the criminal justice system to carry out the law.

If there is to be no death penalty law in Pennsylvania, such decision should come from the legislative body. Otherwise, the rule of law envisioned by our Founding Fathers as the bedrock principle of our democracy becomes unglued by being only applied when convenient and disregarded at will.